Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4995 | **DATE** | 9/19/2002 |
| **CASE TITLE** | Richard A. Dell'Aringa vs. SBC Global Services, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Ameritech's motion for summary judgment is granted in its entirety, and this action is dismissed with prejudice.(8-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 2 0 2002 | 20 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD A. DELL'ARINGA,           )
                                  )
          Plaintiff,              )
                                  )
     v.                           )   No.  01 C 4995
                                  )
SBC GLOBAL SERVICES, INC.,        )
et al.,                           )   DOCKETED
                                  )
          Defendants.             )   SEP 2 0 2002

MEMORANDUM OPINION AND ORDER

Richard Dell'Aringa ("Dell'Aringa") has charged his former employer SBC Global Services, Inc. ("SBC") and Ameritech Corp. ("Ameritech")[1] with employment discrimination actionable under the Age Discrimination in Employment Act ("ADEA," 29 U.S.C. §§621-634) and Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§2000e to 2000e-17). Ameritech has filed a Fed. R. Civ. P. ("Rule") 56 motion for summary judgment, and both sides have complied with this District Court's LR 56.1.[2] For the reasons

---

[1] SBC was wholly owned by Ameritech during the events at issue (Amended Answer ¶7). As did the parties' briefs, this opinion calls the employer "Ameritech."

[2] LR 56.1 is designed to facilitate resolution of Rule 56 motions by calling for evidentiary statements and responses (both with record citations), highlighting the existence or nonexistence of factual disputes. This opinion cites to Ameritech's LR 56.1(a)(3) statement as "A. St. ¶ --" and to Dell'Aringa's LR 56.1(b)(3)(B) statement of additional facts as "D. St. ¶ --." Dell'Aringa's Response to Ameritech's LR 56.1(a)(3) statement is cited "D. Resp. ¶ --," although where an A. St. assertion is not contradicted a citation to the latter ordinarily suffices. "A. R. St. ¶ --" refers to Ameritech's reply statement. This opinion employs the same "A." and "D." abbreviations in referring to the parties' exhibits and

set out in this memorandum opinion and order, Ameritech's motion is granted in its entirety and this action is dismissed.

## Summary Judgment Standards

Familiar Rule 56 principles impose on parties moving for summary judgment the burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "consider the evidentiary record in the light most favorable to the non-moving party...and draw all reasonable inferences in his favor" (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). And Pugh v. City of Attica, 259 F.3d 619, 625 (7th Cir. 2001) has echoed the teaching of Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986):

> A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

As with any summary judgment motion, this Court accepts nonmovant Dell'Aringa's version of any disputed facts, but only so long as it is supported by record evidence. What follows in the Background section is culled from the parties' submissions.

## Background

Dell'Aringa was first hired by Ameritech as a solutions consultant in March 1998, when he was 55 years old (A. St. ¶5). On April 2, 2000 Ameritech promoted Dell'Aringa to Global Account

---

memoranda.

2

Executive (id. ¶11). According to a written evaluation by the executive who served as his direct superior until November 2000, Dell'Aringa was meeting both his targets and Ameritech's expectations in his new position (D. St. ¶¶10, 11). Then beginning in November 2000 Dell'Aringa was supervised by Ameritech's Global Sales Director Barbara Calderone ("Calderone"), who was in turn supervised by Regional Vice President of Global Markets Tom Benner ("Benner') (A. St. ¶23).

In September and October 2000 Ameritech offered early retirement packages to all 34 executive employees at the facility where Dell'Aringa worked (id. ¶25). Dell'Aringa and 24 other executive employees, men and women over a range of ages, elected not to take the early retirement option (id. ¶¶52, 54). Three Global Account Managers were among the nine employees who did accept the retirement package (id. ¶58).

About November 16, 2000 Dell'Aringa was temporarily assigned to be the Global Account Manager for Ameritech's Sears and Zurich accounts, filling a vacancy left by the previous manager's retirement (A. St. ¶21). On November 17 Dell'Aringa attended a meeting at Sears at which Kevin McLinden ("McLinden") presented a Request for Information ("RFI") for Sears' new telecommunications system to Dell'Aringa and a number of competing vendors (id. ¶¶28-31).

Dell'Aringa then met with McLinden's superior, Rory

3

Herriman ("Herriman"), and other Sears executives who expressed their anger about Ameritech's poor handling of past projects (D. Resp. ¶33). Among other comments Herriman said (A. R. St. ¶20):

> I don't know why they gave [the RFI] to you because you don't stand a snowball's chance in hell of obtaining the bid.[3]

In the circumstances Dell'Aringa believed that Ameritech would not be given a serious chance to bid on the RFI (D. St. ¶30).

Later that day Dell'Aringa reported Sears' dissatisfaction with Ameritech to Regional Vice President Benner (id. ¶28). According to Dell'Aringa, he also told Benner about the RFI and said that in light of Sears' attitude about Ameritech, he did not intend to submit a bid for the project (id. ¶¶29-30).[4] Benner said he would communicate with Herriman but did not respond to Dell'Aringa's plans for the RFI (id. ¶31).

In December 2000 Benner learned that another vendor was seeking to partner with Ameritech on the "Sears project," and he met with Calderone and Dell'Aringa about the RFI (A. St. ¶¶35,

---

[3] [Footnote by this Court] Ameritech argues the statement is inadmissible as hearsay (A. R. St. ¶20). Not so: It is offered not for its truth or falsity but for the relevant purpose of showing Dell'Aringa's belief that Sears would not seriously consider Ameritech's bid. So the statement is admissible for the non-hearsay purpose of showing its effect on the listener.

[4] Ameritech denies that Dell'Aringa mentioned anything to Benner about the RFI or his intention not to submit a bid during that November conversation (A. R. St. ¶¶27, 29-31). While this opinion properly credits Dell'Aringa's version, the resolution of that dispute does not change the end result.

4

38). Although the parties dispute whether Dell'Aringa had previously told Benner that he did not plan to submit a bid (A. R. St. ¶¶27, 29-31), it is undisputed that at that December meeting Benner told Dell'Aringa that it was critical to respond to the RFI and that Dell'Aringa would have to work hard to do so (D. St. ¶35).

Later that day Dell'Aringa called McLinden at Sears and told him what all parties admit was a known lie: that Ameritech required more time to respond to the RFI because of a fire at Ameritech's Ohio facility (D. St. ¶37). McLinden was skeptical about Dell'Aringa's excuse but extended Ameritech's deadline to respond to the RFI (id. ¶¶38, 39).

Within a week Dell'Aringa told both Calderone and Benner that he had lied to Sears about the fire (A. St. ¶¶44, 45). While Benner's immediate response to learning of Dell'Aringa's conduct is disputed (A. R. St. ¶43), Ameritech's uncontradicted testimony is that on December 18 Benner and Calderone determined that Dell'Aringa should be fired for breaching Ameritech's Code of Business Conduct ("Code") by lying to Sears (A. St. ¶46). Although that written Code did not specifically prohibit lying to customers, Dell'Aringa understood that it was probably against Ameritech policy (D. Resp. ¶10).

Benner had ultimate authority to fire Dell'Aringa (D. St. ¶49), but he says that he orally sought clearance from the Human

5

Resources and Legal Departments before taking action (id. ¶¶50, 52). Although Benner does not recall the precise date on which that clearance was obtained (A. R. St. ¶54), on January 22, 2001 Benner and Calderone met with Dell'Aringa and terminated his employment (A. St. ¶50). Benner told Dell'Aringa that he was being fired because he lied to Sears (id.).

While those events were taking place, Ameritech had begun interviewing applicants for three vacant Global Account Manager positions, including the manager for the Sears account (A. St. ¶77). Dell'Aringa interviewed for that position on December 5, 2000 (id. ¶64). Two of the Global Account Manager positions were then filled by men: Leonard Thomas, then aged 35, and Ray Engelsman, then aged 53 (id. ¶¶74, 78). Christine Tokarski ("Tokarski"), a 49 year old woman, was interviewed on December 20, 2000 and was then hired as the Global Account Manager for the Sears and Zurich accounts (id. ¶¶69, 72).

In early January 2001 Calderone told Dell'Aringa that he had not been selected for the Sears-Zurich Global Account Manager position (A. St. ¶68). Calderone explained that Tokarski had been chosen because Benner and Calderone believed she had more experience in working with network and large global accounts (id. ¶71).

During his time at Ameritech Dell'Aringa never witnessed any negative treatment of Ameritech employees on the basis of age or

6

sex (A. St. ¶84, 85). But Dell'Aringa believes that he was the victim of age and sex discrimination because Ameritech failed to promote him to the Global Account Manager position and instead gave the job to Tokarski, a woman nine years his junior who he believed was less qualified than he (D. Resp. ¶90).

As to his termination-based claim of age discrimination, Dell'Aringa points to the treatment accorded Ameritech's former Global Account Manager for United Airlines Ed Brizzolara ("Brizzolara")(A. St. ¶¶90-92). Brizzolara (age 46) was implicated in the release of confidential and unfavorable information about the United account to a Chicago alderman in violation of Ameritech's Code (D. St. ¶79). When that information appeared in a front-page Chicago Tribune article mentioning Ameritech, United's CEO complained to Ameritech because he was furious that the information had been leaked (id. ¶78). Brizzolara was then removed as the account manager for the United account but was appointed to an active global sales director position (id. ¶82). No further disciplinary action was taken because of the United incident (id. ¶83)

As for the procedural preconditions to this action, Dell'Aringa filed a timely EEOC charge of age and sex discrimination. After the EEOC then issued a right-to-sue notice, Dell'Aringa timely initiated this action on June 28, 2001, alleging that Ameritech had unlawfully failed to promote

him because of his age and sex and had terminated him in violation of ADEA.

## Age Discrimination

To prevail on his age discrimination claims, Dell'Aringa must prove[5] that his age "actually played a role in [Ameritech's decisionmaking] process and had a determinative influence on the outcome" (Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000), quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). At the summary judgment stage, the required showing of age discrimination can be made in one of two ways: with direct or circumstantial evidence that the adverse employment action would not have been taken but for plaintiff's age (the so-called direct method) or through the McDonnell Douglas burden-shifting method (Richter v. Hook-SupeRx, Inc., 142 F.3d 1024, 1028 (7th Cir. 1998)). Here Dell'Aringa attempts the latter approach.

Under that formulation Dell'Aringa must establish a prima facie case by demonstrating (1) that he was a member of the protected class (age 40 or over), (2) that he was performing his job to his employer's legitimate expectations, (3) that he was

---

[5] At this summary judgment stage, of course, Dell'Aringa need not "prove" or "establish" or "show" anything. Instead he must merely demonstrate the existence of a genuine issue of material fact to defeat Ameritech's summary judgment motion. Although this opinion nonetheless most frequently employs one of those quoted terms because that is the terminology used by the cited cases, this Court has consistently imposed that lesser burden on Dell'Aringa in testing his claims.

8

subjected to an adverse employment decision and (4) that he was treated less favorably than similarly situated and younger employees (Richter, 142 F.3d at 1028). If Dell'Aringa were to meet those requirements, a rebuttable presumption of discrimination would arise and the burden of production would shift to Ameritech to articulate some non-discriminatory reason for its actions (id.). If Ameritech did so the presumption would dissolve, and Dell'Aringa would have to show that Ameritech's asserted reason was pretextual (id.): either (1) that Ameritech was more likely motivated by a discriminatory reason than by its proffered reason or (2) that its proffered reason is unworthy of credence (McCoy v. WGN Cont'l Broad. Co., 957 F.2d 368, 372 (7th Cir. 1992)).

Dell'Aringa clearly meets the first and third requirements of his prima facie case on both his termination and failure-to-promote claims: He was over 40 and suffered adverse employment decisions. But in both instances Dell'Aringa has failed to meet the fourth requirement because he has not shown that a younger and similarly situated employee was treated more favorably. Even more importantly, Dell'Aringa has failed to create an issue of material fact as to either his termination or the refused promotion that could undermine Ameritech's stated reasons for those actions such that a reasonable jury could find that

9

Ameritech's reasons were a pretext.[6] This opinion considers each employment action in turn.

Termination

Dell'Aringa ascribes his January 2001 termination at age 58 to a violation of ADEA. But Dell'Aringa's prima facie case is flawed because he has failed to show that he was treated less favorably than a similarly situated employee. Such an employee must have "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them" (Peele v. Country Mut. Ins. Co., 288 F.3d 319, 330 (7th Cir. 2002), quoting and stressing that language from Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000)).

Dell'Aringa identifies Brizzolara as a substantially younger employee who was not disciplined for his alleged disclosure of information about the United Airlines account (D. Mem. 14). But Brizzolara's conduct is legitimately distinguishable from Dell'Aringa's. Unlike Dell'Aringa, Brizzolara did not disseminate false information. Even accepting that both

---

[6] As the ensuing discussion reflects, the same analysis that defeats Dell'Aringa on the issue of pretext vel non is also fatal to the second element of a prima facie case--that relating to the employer's legitimate expectations. But as both this Court (see, e.g., Peyton v. Otis Elevator Co., 72 F.Supp.2d 915, 919 (N.D. Ill. 1999)) and our Court of Appeals (see, e.g., Olsen v. Marshall & Ilsley Corp., 267 F.3d 597, 600-01 (7th Cir. 2001)) have frequently done, this opinion has moved directly to the dispositive failure to show pretext.

10

Brizzolara and Dell'Aringa violated Ameritech's Code, that Code does not specifically prescribe the discipline for violating its precepts (D. Mem. 11 n.4). Nor does the Code act as a strict sentencing guideline that inhibits (let alone eliminates) Ameritech's discretion to sanction employees according to their individual violations. Dell'Aringa offers no evidence to call into question Ameritech's view that Dell'Aringa's dishonesty significantly reduced its confidence in his integrity in a way that Brizzolara's disclosure of confidential, but truthful, information did not.

But even if Dell'Aringa had succeeded in showing Brizzolara was a similarly situated employee, Dell'Aringa still has not raised the necessary inference that Ameritech's reason for firing Dell'Aringa was pretextual. Remember that Ameritech's stated reason for terminating Dell'Aringa is that he lied to a customer. Surely an employee's dishonesty is a legitimate business reason for termination that can satisfy an employer's burden under the McDonnell Douglas framework (see, e.g., Sample v. Aldi Inc., 61 F.3d 544, 548-49 (7th Cir. 1995)). Dell'Aringa does not deny that he lied or that the lie was against Ameritech policy (D. Resp. ¶10). Instead he argues that Ameritech's reason is itself a lie unworthy of credence.

First, Dell'Aringa points to the six week delay between Ameritech's learning about his lie and his termination, noting

11

that he was not reprimanded during that period (D. Mem. 13).
Ameritech explains that the delay took place because even though
Benner decided to fire Dell'Aringa on December 18, 2000, it took
several weeks to obtain clearance from Human Resources (A. St.
¶48).[7]

Arguing that such a delay suffices to support an inference
that Ameritech's reason was pretextual, Dell'Aringa relies on an
unpublished District Court opinion, Minervini v. Seven Worldwide,
Inc., No. 01 C 683, 2002 U.S. Dist. LEXIS 560, at *15-16 (N.D.
Ill. Jan. 14). Minervini found a genuine issue of material fact
had been raised by an unexplained three month gap between an
employee's behavioral problems and his termination. But where as
here a shorter time interval has been explained by uncontroverted
and credible evidence, the delay does not permit a reasonable
inference of pretext (see Shank v. Kelly-Springfield Tire Co.,
128 F.3d 474, 479 (7th Cir. 1997), overturning a jury verdict in
part because a two month delay in firing that was reasonably
explained by uncontradicted testimony did not permit a reasonable
inference of pretext).

Here Benner and Calderone explain that they sought clearance

---

[7] Dell'Aringa argues that Benner's statement that Human
Resources gave him clearance to terminate Dell'Aringa is
inadmissible hearsay (D. Mem. 12-13). Once again the statement
is not hearsay, for it is offered not for the truth of whether
clearance was granted, but rather for the fact of Benner's having
awaited a response from Human Resources.

12

from Human Resources before firing Dell'Aringa. While those communications were not documented, Dell'Aringa offers no evidence that obtaining such clearance over the phone was improper or out of the ordinary. Further, despite Benner's inability to recall the date of his last communication with Human Resources, the record does not contain any independent evidence to contradict Ameritech's explanation for the delay.

Moreover, an employer's delay in disciplining an employee's misconduct, while the employee is allowed to continue working for a short period, does not create a material issue of fact as to pretext (see Sample, 61 F.3d at 549, responding "So what?" to just such a contention). Dell'Aringa's position is essentially that Ameritech committed discrimination by not firing him immediately after learning that he lied. But the delay at issue (note also that the six weeks encompassed the holiday season) does not create even a reasonable inference that Dell'Aringa's admitted dishonesty was not the reason for his termination.

Next Dell'Aringa, citing Horwitz v. Holabird & Root, 312 Ill. App. 3d 192, 197, 726 N.E. 2d 632, 636 (1st Dist. 2000), claims that the lie could not have prompted his termination because Benner and Calderone did not take active steps to set the record straight with Sears--something that he says amounted to an implicit affirmance or ratification of his conduct (D. Mem. 5-6). Even apart from the totally dissimilar situation at issue in

Horwitz, which really renders it valueless as authority here, any such notion of affirmance or ratification of an acknowledged lie to an important customer is wholly unpersuasive on the issue of pretext.

By the same token, Dell'Aringa's contention that neither Ameritech nor Sears suffered any harm as a result of the lie misses the mark entirely. Even if Dell'Aringa views the incident differently, "to survive summary judgment he must call into question the honesty of [Benner's] belief that it was significant" (Sample, 61 F.3d at 549). Nothing that Dell'Aringa has proffered impugns the honesty of Ameritech's understandable position that Dell'Aringa's admitted lie fatally impaired Benner's confidence in his honesty and integrity.

Failure To Promote

Dell'Aringa also asserts that Ameritech's decision to hire Christine Tokarski rather than to promote him to the Global Account Manager position violated ADEA. Here Dell'Aringa has failed to meet the fourth factor of the prima facie case for a different reason. To satisfy that factor, an inference of discrimination is reasonable only when the person favored over the plaintiff is "substantially"--at least ten years--younger (Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 892 (7th Cir. 1997). Tokarski, nine years younger than Dell'Aringa (and also within ADEA's protected age category), falls shy of that ten year

14

differential.

Dell'Aringa incorrectly seeks to invoke Miller v. Borden, Inc., 168 F.3d 308, 313 (7th Cir. 1999) to limit the substantially-younger requirement to only reduction-in-force cases. But any such reading of Miller was specifically rejected in Hoffman v. Primedia Special Interest Publ'ns, 217 F.3d 522, 524-25 (7th Cir. 2000), which applied Hartley's ten year measurement of "substantially" younger where a negative employment action was taken against an individual employee.

Of course Dell'Aringa can still present a triable claim through evidence that the employer viewed his age as significant (Hartley, 124 F.3d at 893). But Dell'Aringa has presented no evidence that Ameritech's failure to promote him was motivated by his age.[8] And even if Tokarski had qualified as a substantially younger employee, Dell'Aringa has not raised a reasonable inference that Ameritech's reasons for not promoting him were mere pretext.

Ameritech essentially gives two reasons for not promoting

---

[8] Although not advanced directly in his response to the current motion, Dell'Aringa's Complaint suggests that Ameritech discriminated against its older workers by offering them the opportunity to participate in a voluntary retirement program (Complaint ¶¶1,10). But "an offer of incentives to retire early is a benefit to the recipient not a sign of discrimination" (Peele, 288 F.3d at 331 n.14, quoting Henn v. Nat'l Geographic Soc., 819 F.2d 824, 828 (7th Cir. 1987)). It is also undisputed that none of the other 18 over-40 employees who declined the retirement offer--not one except for Dell'Aringa--was ever demoted or otherwise penalized (A. St. ¶¶54-58).

15

Dell'Aringa. Both call for the denial of Dell'Aringa's claim of such discrimination, though either would have been sufficient.

First, Ameritech states that Dell'Aringa was not promoted because Benner and Calderone had already decided to fire him for lying to Sears. On that score this opinion has already held that he has failed to raise a reasonable inference that the stated reason for his termination was pretextual. And it necessarily follows that the same reason provides more than ample support for a denial of promotion.

Second, Ameritech explains that Tokarski was hired because Benner and Calderone believed that her experience with network and global accounts made her more qualified for the position. According to McCoy, 957 F.2d at 373, quoted again in Richter, 142 F.3d at 1029:

> [T]he issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers.

Once again Dell'Aringa has failed to present a question of fact that Benner and Calderone did not honestly believe that Tokarski was the better candidate.

Dell'Aringa's contention that he was more qualified than Tokarski consists largely of his own perceptions of their relative experience. Thus he highlights his assertedly superior background in certain respects, while downplaying his relative

16

inexperience with network accounts (D. Mem. 8). In addition he urges that he deserved priority because Ameritech had an established preference for promoting current employees and Tokarski was an outside hire (id.).

But this Court "does not sit as a super personnel department to review an employer's business decisions" (Ransom v. CSC Consulting, Inc., 217 F.3d 467, 471 (7th Cir. 2000), citing McCoy, 957 F.2d at 373). To the contrary, "[e]mployers may act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors (more properly, differences in assessment) do not matter" (Baron v. City of Highland Park, 195 F.3d 333, 341 (7th Cir. 1999) quoting Kuhn v. Ball State Univ., 78 F.3d 330, 332 (7th Cir. 1996)).

As before, Dell'Aringa's task is to show not that he was actually more qualified for the position, but rather that Ameritech lied about its reason. And in that respect nothing calls for a reasonable inference that Dell'Aringa was so much better qualified than Tokarski that Benner and Calderone could not have honestly believed she was the superior candidate.

Added evidence further supports the conclusion that age played no role in Ameritech's decisionmaking process. Dell'Aringa was first hired by Ameritech when he was 55 years old and was promoted to Global Account Executive at age 57. As this

17

Court has said in <u>Zielonka v. Topinka</u>, 28 F.Supp.2d 1081, 1086 (N.D. Ill. 1998)(internal quotation marks omitted):

> According to <u>Wolf v. Buss (America) Inc.</u>, 77 F.3d 914 923-924 (7th Cir. 1996), the fact that the complaining employee was initially hired when he was well into the protected age class, although not conclusive, is somewhat indicative of [the employer's] lack of discriminatory intent in later adverse actions.

Relatedly, the fact that Benner made the employment decisions while he too was well into the protected class "is also a significant factor in evaluating the discrimination claim" (<u>id.</u>, citing <u>Richter</u>, 142 F.3d at 1032).

In sum, when all the evidence is taken into account, no reasonable juror could find that Dell'Aringa was terminated or denied a promotion because of his age. Hence his ADEA claims fail in their entirety.

<u>Sex Discrimination</u>

What has been said as to Dell'Aringa's ADEA claims is equally fatal to his claim that Ameritech's failure to promote him violated Title VII. As with his age discrimination claims, Dell'Aringa has attempted the <u>McDonnell Douglas</u> burden-shifting method, and there is no need to repeat the steps entailed in that process. Indeed, in this instance it makes eminently good sense to cut to the chase by moving directly to the ultimate discrimination question rather than dwelling on Dell'Aringa's satisfaction or lack of satisfaction of the prima facie case requirements (see n.6).

18

As already explained, Dell'Aringa has failed to meet his burden of creating a reasonable inference that Ameritech's stated reasons for failing to promote him were a pretext for intentional discrimination. In particular, though it is true that Ameritech hired a woman to fill one of the Global Account Manager spots, Dell'Aringa offers no evidence to suggest that sex played any role in Ameritech's decision. To the contrary, Ameritech hired men for two of the three open Global Account Manager positions. (A. St. ¶¶76, 80). Here too no reasonable juror could find that Ameritech's non-promotion of Dell'Aringa was based on his sex.

## Conclusion

Dell'Aringa has failed to present evidence from which any reasonable inference of either age or sex discrimination may fairly be drawn. To frame the matter in Rule 56 terms, he has not shown a genuine issue of material (that is, outcome-determinative) fact, so that Ameritech is entitled to a judgment as a matter of law. Its summary judgment motion is granted in its entirety, and this action is dismissed with prejudice.

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　Milton I. Shadur
　　　　　　　　　　　　　　　Senior United States District Judge

Date: September 19, 2002

19